James L. Watson, J.
Defendant is charged with violation of section 6 of article II of the Rules and Regulations of the Department of Parks, City of New York, inasmuch as he flew a kite advocating the election of John V. Lindsay as Mayor of the City of New York, in the vicinity of the Delacourt Theatre near the center of the park, at about 81st Street.
■Section 6 of article II provides: “ No person shall distribute, display, transport, carry or construct any flag, banner, sign, emblem, model, device, pictorial representation, or other matter, within any park or park-street, for advertising or political pur *471 poses. Nor for the same purposes shall any person display by means of aircraft, kite, balloon, aerial bomb or any other device, any flag, banner, sign or any other matter above the surface of any park or park-street.”
The defendant admits to the charge of flying a kite for political purposes, but defends his activities as being within his constitutional guarantees under the First and Fourteenth Amendments of the United States Constitution.
The parks of New York City have traditionally provided a forum for its citizens for the exchange of ideas and the propagation of political, social and economic changes.
Indeed, since ancient times the use of public buildings, streets and parks for purposes of expressions of opinion and dissent, have long been considered as a part of the constitutional privileges, immunities, rights and liberties of citizens. ‘ ‘ Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions.” (Hague v. C.I.O., 307 U. S. 496, 515, [1939].)
This privilege is not absolute, however, and does not constitute an immunity from the legitimate exercise of State police power. (Alabama v. McAdory, 246 Ala. 1, cert, dsmd., 325 U. S. 450 [1944].)
The New York Court of Appeals, in People v. Haas (299 N. Y. 190 [1949]) held that section 21 of article III of the Rules and Regulations of the New York City Department of Parks was a constitutional exercise of police power, inasmuch as the regulation had as its sole objective “ the safety, comfort and convenience of the people of the city in their appropriate uses of its public parks ” (p. 194).
The constitutionality of section 6 of these rules and regulations, however, is in question. In order that a statute be sustained as a proper exercise of a police power, the enactment must have as its objective the prevention of an offense or manifest evil, or the preservation of the public health, safety, morals or general welfare. (Tyson & Bros. v. Banton, 273 U. S. 418 [1927].) In addition, there must be some clear and substantial connection between the assumed purpose of the enactment and the actual provisions thereof. (Goldblatt v. Hempstead, 369 U. S. 590 [1962].)
This regulation was recently reviewed by the Criminal Court of the City of New York in People v. Kaufman (47 Misc 2d 1074 [1965]). In this case the defendant was charged with distributing political literature in a New York City park. In finding the *472 regulation violative of the First Amendment, the court stated (p. 1076): “ Here we have a regulation which goes even further, for, if granted the interpretation sought by the People, it absolutely bans distribution of political leaflets, without any consideration of whether such distribution in any way adversely affects the proper use of the park or ‘ the proper regulation of public places. ’ This is a prior restraint upon freedom of press without any .showing of interference with the proper park use of the public park involved.”
In this case, the regulation attempts to restrict the flying of kites for the purpose of expressing political preferences. The People argue without substantiation that the flying of kites raises additional problems of safety that are not involved in the hand distribution of political literature. In support of this argument, the People point out that section 30 of the Rules and Regulations of the Park Department specifically provides conditions under which kites may be flown. The defendant is not charged with violation of section 30. Further, the liberties of the press are not confined to newspapers, periodicals, pamphlets and leaflets. Said Mr. Chief Justice Hughes in Lovell v. Griffin (303 U. S. 444, 452 [1938]): “ The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.”
The wording of section 6 of article II is so broad and vague in its terms as to be impracticable of enforcement or obedience.
Will the New York City Police Department provide a sky pilot to prevent sky writers delivering their messages above the surface of city parks?
Will motorists be banned from entering the parks if political stickers are displayed on the bumpers of the vehicle?
Will the parks be off limits to mothers with shopping bags or children with toy balloons which may display the names of local supermarkets or candidates for public office?
Recent political campaigns have proven, if nothing else, that if there is a way for candidates to bring attention to themselves or a message to the citizens, whenever possible, it will be used.
Unless the method used is manifestly offensive or there is some substantial evidence that it interferes with the health, safety, comfort or convenience of the general public, there should be no interference from the State or its political subdivisions.
Freedom of speech and of the press are the fundamental principles which are essential to the preservation of democracy and the progress of civilization.
The courts have traditionally been the guardian of these rights as they are prescribed by the State and Federal Constitutions. *473 The broad prohibition of flying kites for political purpose does not show any clear and substantial connection with the lawful objective of providing for “ the safety, comfort and convenience of the people of the city in their appropriate uses of its public parks.”
The statute does not fall within a proper exercise of police power in that its prohibitions are too broad and general and it is therefore unconstitutional. (Palmer v. United States, 75 F. Supp. 63 [U. S. Fist. Ct., F. C., 1947].)
Accordingly the charge here under consideration is dismissed.